__NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER__

**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000256
13-AUG-2013
09:38 AM**

NO. CAAP-12-0000256

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
MARSIAN ALIWIS, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 10-1-0221)


SUMMARY DISPOSITION ORDER
(By:  Nakamura, C.J., Foley and Reifurth, JJ.)

Defendant-Appellant Marsian Aliwis appeals from a
February 27, 2012 Judgment of Conviction and Sentence entered in
the Circuit Court of the First Circuit[1] for two counts of assault
in the first degree pursuant to Hawaii Revised Statutes (HRS)
707-710 (1993).

Upon careful review of the record and the briefs
submitted by the parties and having given due consideration to
the arguments advanced and the issues raised by the parties, as
well as the relevant statutory and case law, we conclude this
appeal is without merit.

---

[1]     The Honorable Randal K.O. Lee presided.

Aliwis contends there was insufficient evidence that he caused "serious bodily injury" to the victim in each count and that he did so intentionally or knowingly. "'Serious bodily injury' means bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." HRS § 707-700 (1993).

> The standard of review for sufficiency of the evidence is well established; namely, whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt. Sufficient evidence to support a prima facie case requires substantial evidence as to every material element of the offense charged. Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. Under such a review, we give full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact.

State v. Grace, 107 Hawai'i 133, 139, 111 P.3d 28, 34 (App. 2005) (block quote format changed) (quoting State v. Ferrer, 95 Hawai'i 409, 422, 23 P.3d 744, 757 (App. 2001)).

The complaining witness in count 1 (CW 1), testified that while talking on his cell phone he "noticed [Aliwis] arguing with his wife." "[A]s soon as I pressed the hang up button," CW 1 testified that he was stabbed in the shoulder. "[I]t felt like a thud, like a punch" followed by "sharp pain." CW 1 turned and punched Aliwis, after which he remembered "going to the ground and [Aliwis] stabbing me in [my left] leg . . . [on the] outer thigh closer to the knee." CW 1 "remember[ed] looking down at [his] leg and trying to hold [his] pants together to keep [his] leg together so [he would not] bleed as much." CW 1 added, "I remember I could stick my hand in it . . . it was pretty deep."

After leaving the hospital, CW 1 suffered weakness to his left leg and "couldn't walk for about two months without the

2

support of [his] crutches." With regard to the injury to his right shoulder, CW 1 said the impairment lasted a "month to a month and a half." When the deputy prosecutor asked "[d]id you experience any weakness in your right shoulder, right arm following this incident?" CW 1 stated:

> Um yeah. Like I couldn't like maneuver it as good. . . . I could move my forearm and down, but -- like my upper arm I couldn't like move it around too much. . . . Lift it, rotate it, move it back and forth, whatever.

CW 1 said he has a "permanent scar" on his shoulder shaped like a "crescent moon" and a scar on his left thigh. He displayed both scars to the jury.

Aliwis stabbed the complaining witness in count 2 (CW 2), as CW 2 came to the aid of CW 1. CW 2 "went to run up to [Aliwis] and try grab the knife then [Aliwis] stabbed [CW 2]" in the right shoulder. CW 2 said Aliwis stabbed him again in his left shoulder.

CW 2 testified he has permanent scars on his right and left shoulders and displayed his scars to the jury. Because of this assault, CW 2 also has pain and limited movement in his both his right and left arm.

Another witness, observed CW 1's right shoulder was "sliced . . . kinda wide open[]" and his leg was "really . . . sliced open . . . [l]ike real bad." This witness took off his "sweater . . . [and] inside shirt . . . to form a tourniquet."

The jury also heard testimony from several Honolulu Police Department police officers describing the extent and severity of the wounds CW 1 and CW 2 suffered. Officer Mochizuki saw that "[CW 1] had a deep flesh wound, a gaping wound on his right shoulder. And he also had a very deep cut on his left upper thigh, and the cut appeared to hit the bone. It was very deep." Officer Uno also saw that CW 1's "left thigh had a pretty

good size cut on it," and that CW 2 had "cuts on both left and right shoulder areas."

The testimony of Susan Steinemann, M.D. (Dr. Steinemann), CW 1's treating physician, provided additional corroboration of the extent and severity of the injuries he suffered. Dr. Steinemann testified that she treated CW 1 for injuries that were consistent with having been inflicted by a knife. Dr. Steinemann said CW 1 complained of pain "[a]t the site his lacerations which were his right shoulder, left leg, and his penis."

With regard to any "sensory deficits" CW 1 experienced, Dr. Steinemann answered,

> with the degree and depth of his wounds, one would expect him to have numbness in the area of the skin surrounding the wound certainly more distal; in other words, more towards the fingers and more towards the foot, because the nerves generally run from the inside to the outside of the body.

Dr. Steinemann explained to the jury that the "major laceration" to CW 1's right shoulder was "about three inches . . . [and went] through the skin, the thin layer of fat, and into what we call the muscle, the muscle belly . . . [to an] estimate[d] depth of two to three inches." She testified that, that muscle is "responsible for lifting the elbow out to the side." Dr. Steinemann said,

> [CW 1] . . . would be expected to have pain with motion of his arm and maybe some limitation of motion of that arm for a variable time period. I would estimate at least a couple weeks but could extend two months and sometimes more permanently.

In response to defense counsel's question, "So what kind of limitations on the use of the arm would happen? Would he be able - - you said lifting his arm would be difficult?", Dr. Steinemann replied, in relevant part,

> [A]s you might expect with a wound that goes through the muscle itself, all of those severed fibers scar and sometimes don't heal completely, so there can be some long term weakness of that muscle.

4

Dr. Steinemann also explained to the jury that the major laceration to CW 1's left thigh was "about ten inches" in length and went "down quite deep down through the muscle belly through some vessels through skin nerves and almost down to the bone. . . . [T]o reach the bone [was] about half of the diameter of his leg . . . at least four inches."

The testimony of William Andrew Wilson, M.D. (Dr. Wilson), CW 2's treating physician, provided additional corroboration of the extent and severity of the injuries CW 2 suffered. Dr. Wilson said CW 2 had "wounds on both of his upper extremities which were actually hemorrhaging." With regard to CW 2's right shoulder, Dr. Wilson "observed a [12] centimeter laceration -- a laceration's a deep cut -- um, that went full thickness -- I described it as "full thickness" -- into the muscle belly." And that the wound "had gone all through three layers of the skin through the fascia and actually into the muscle."

With regard to CW 2's left shoulder, Dr. Wilson said the laceration "had varying degrees of thickness . . . [and] was also a very deep cut [10 centimeters long]" that left the muscle belly exposed and actively bleeding. Dr. Wilson testified that the injury to CW 2's right and left shoulders were major lacerations that would leave permanent scarring.

Aliwis did not deny stabbing CW 1 and CW 2, claiming in fact that he did so in self-defense. Therefore, and in light of the evidence described above there is sufficient evidence that Aliwis intentionally or knowingly inflicted serious bodily injuries to both CW 1 and CW 2 that caused permanent scarring and protracted impairment of the function of CW 1's leg and arm, as well as CW 2's arm and shoulders.

Therefore,

5

IT IS HEREBY ORDERED that the February 27, 2012 Judgment of Conviction and Sentence entered in the Circuit Court of the First Circuit is affirmed.

DATED:  Honolulu, Hawai'i, August 13, 2013.

On the briefs:

Harrison L. Kiehm
for Defendant-Appellant.

Donn Fudo
Deputy Prosecuting Attorney,
City and County of Honolulu
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge